IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| MICHELLE PANTEL on behalf of herself and all other persons similarly situated, known or unknown, <br><br> Plaintiff, <br><br> v. <br><br> TMG OF ILLINOIS, LLC, d/b/a TED'S MONTANA GRILL, TED'S MONTANA GRILL, INC., and GEORGE W. MCKERROW, JR., <br><br> Defendants. | Case No. 07-C-7252 <br> Hon. Joan B. Gottschall |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO STAY PROCEEDINGS
AND COMPEL ARBITRATION**

The plaintiff, Michele Pantel, knowingly agreed that any disputes relating to her employment with Ted's Montana Grill would be subject to arbitration. As repeatedly emphasized by the Supreme Court, Congress has enacted a national policy favoring the "arbitration of claims that parties contract to settle in that manner." Preston v. Ferrer, 128 S. Ct. 978, 983 (2008). As Ms. Pantel's claims in this action fall squarely within the ambit of the arbitration agreement she signed, those claims are subject to arbitration under the Federal Arbitration Act. For these reasons and those stated below, defendants respectfully request that all proceedings in this action be stayed and that Ms. Pantel be compelled to arbitrate her claims.

**BACKGROUND**

When Ms. Pantel began her employment with Ted's Montana Grill, she signed an agreement to submit any disputes regarding her employment to a grievance and arbitration

process that was carefully and clearly laid out for her review.[1] Pursuant to that agreement, Pantel agreed as follows:

> **In exchange for the company's agreement to submit these disputes to the arbitration procedure and in consideration of the anticipated expedition and minimization of expense provided by this arbitration procedure, I agree that this process shall provide the sole and exclusive remedy for any dispute covered by the arbitration agreement, and I waive any right I might have to sue over or to seek redress for such disputes in any civil or administrative action or forum to the fullest extent allowed by law included but not limited to my right to trial by jury.**

This paragraph was emphasized in bold-face directly above her signature. (*See Decl.*, Exhibit "A" at p. 1). Pantel signed this document knowingly and voluntarily and accepted employment on these terms, working for defendant Ted's Montana Grill, Inc., from July 2, 2007, to November 4, 2007. (Decl. at ¶ 4).

The policy to which Pantel agreed expressly described its scope:

> The Company's Arbitration Procedure is exclusive of any other remedies. It applies to all disputes in any way related to an eligible Team Member's employment, prospective employment, termination of employment, or in any way connected directly or indirectly with employment with the Company, which the parties are unable to resolve through direct discussion. It applies to a Team Member's rights under federal and state statutes and common laws to the fullest extent allowed by law, including, but not limited to: family and medical leave laws and occupational, safety and health laws, the Fair Labor Standards Act, and federal and state anti-discrimination laws, including Title VII of the 1964 Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the California Fair Employment and Housing Act. Under this procedure, Team Members waive any statutory right to a trial by jury. Remedies available under this procedure include all remedies which would be available if the Team Member's dispute were tried in court. The parties further agree that all controversies or claims arising out of or relating to this arbitration procedure, its interpretation, performance or breach, including without limitation the validity, scope and enforceability of the agreement to arbitrate, shall be settled by arbitration and shall be governed by federal law.

---

[1] *See* Declaration of Laura Grunwald, attached as Exhibit "1" to Defendants' Motion, at Exhibit "A" thereto.

Exhibit "A" at p. 3, "Scope of Arbitration Procedure").

Nevertheless, on December 27, 2007, Pantel filed this lawsuit, alleging violations of the Fair Labor Standards Act and the Illinois Minimum Wage Law.  At no time did she attempt to raise these issues through the grievance or arbitration procedure to which she had agreed to abide only a few months before.  When defendants asked Pantel to submit her claims in this action to arbitration, she refused.  (Exhibits "2" and "3" to defendants' Motion).

## LAW AND DISCUSSION

**A.    The Federal Arbitration Act Supports the Arbitration of Employment-Related Claims.[2]**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., supports and encourages the arbitration of employment-related claims.  The FAA explicitly supports the use of arbitration to resolve disputes arising in the workplace.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[2]    The Agreement executed by plaintiff explicitly provides that the procedures agreed-to by the parties are governed by the FAA.  *See* Exhibit "A" at p. 3, "Procedure for the Arbitration."  Moreover, the plaintiff's employment occurred in interstate commerce, as even the plaintiff appears to acknowledge by suing two Georgia corporations and an individual resident of Georgia.  *See, e.g*., Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Univ., 489 U.S. 468, 476 (1989) ("It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce.").

9 U.S.C. § 2.  In Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265 (1995), the Supreme Court reasoned that the basic purpose of Congress in enacting the FAA was to overcome judicial suspicion of arbitration agreements.  Id. at 269; *see also* Perry v. Thomas, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.").  The FAA thus evinces a liberal federal policy favoring arbitration agreements.

In interpreting the FAA, the United States Supreme Court, the Illinois Supreme Court and other Illinois state courts have held that arbitration clauses are to be liberally enforced, in accordance with Congress's declaration of a strong national policy favoring arbitration of disputes.  *See, e.g.*, Preston, 128 S. Ct. at 983; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Roubik v. Merrill Lynch, Pierce, Fenner & Smith, 692 N.E.2d 1167, 1172 (Ill. 1998); LAS, Inc. v. Mini-Tankers, USA, Inc., 796 N.E.2d 633, 637 (Ill.App. 2003); Caudle v. Sears, Roebuck & Co., 614 N.E.2d 1312, 1318 (Ill.App. 1993).

The FAA also preempts any state law which would prohibit the use of arbitration to resolve a dispute covered by the federal statute because Congress did not want state and federal courts to reach different outcomes about the validity of arbitration.  "The Federal Arbitration Act pre-empts state law [and] state courts cannot apply state statutes that invalidate arbitration agreements."  Dobson, 513 U.S. at 272, *citing*, Southland Corp. v. Keating, 465 U.S. 1, 15-16 (1984).

Ms. Pantel is seeking relief for alleged violations of the Fair Labor Standards Act and Illinois state wage and hour law.  Complete relief is available to her under the arbitration agreement she signed and she should be required to honor that agreement.

**B.     A Stay of Proceedings is Appropriate Where the Parties Have Agreed to Arbitrate the Claims at Issue.**

The FAA requires the issuance of a stay where, as here, an agreement to arbitrate has been entered into by the parties to the litigation. Section 3 of the FAA provides as follows concerning the issuance of a stay of proceedings under such circumstances:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also* Morgan v. Bill Kay Chrysler Plymouth, 2002 WL 31133102, *1 (N.D.Ill. July 17, 2002) (Gottschall, J.) ("Sections 3 and 4 of the FAA require federal courts to grant any request for a stay under a valid arbitration clause and to direct the parties to proceed to arbitration."). Therefore, a stay of proceedings is appropriate where, as here, the parties to a lawsuit have agreed to arbitrate the claims presented to the court.

**C.     A Stay of Proceedings is Appropriate in this Case.**

In determining whether a stay of proceedings is appropriate in a particular case, courts are instructed to examine the language of the agreement in light of the strong federal policy in favor of arbitration. As the U.S. Supreme Court stated in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Any

ambiguities in the agreement or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id*. There are two factors to consider in making this determination: (1) whether the parties entered into a valid and enforceable agreement to arbitrate; and if so, (2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate. Morgan v. Bill Kay, *supra*. The language of the Agreement signed by the parties here supports the issuance of a stay of proceedings in this case.

    1.    *The Parties Signed a Mutual Agreement to Arbitrate Claims*.

In the present case, the parties signed a valid arbitration agreement. The Agreement was signed by both Ms. Pantel and an authorized representative of TMG and mutually bound the parties to final and binding arbitration of claims thereafter arising between them. (**Exhibit "A"**). The Agreement applies to any and all claims subsequently arising between Pantel and TMG. (Id.). In consequence, the parties did in fact agree to arbitrate claims arising between them in the future.

    2.    *The Agreement is Valid and Enforceable*.

The language of the arbitration agreement is clear and definite. There is no element of unfair surprise or unconscionability. The agreement states, in two places, that by signing the agreement, Pantel was waiving her right to a jury trial, and summarized the agreement in bold-face just above the signature line, so that Pantel could not possibly have missed it. In Morgan v. Bill Kay, *supra*, this Court enforced an arbitration agreement where the agreement clearly set forth any exclusions and the fact that the signers were relinquishing their rights to punitive damages and a jury trial, and included a capitalized paragraph specifying that the signer had read the document and agreed to its terms and conditions. "Any reasonable consumer who reads the

arbitration agreement would understand these terms and the consequences of his or her assent." *Id*. at *3.

Defendants anticipate that Pantel may argue that the agreement was "unconscionable." Under Illinois law, a finding of unconscionability requires a finding of procedural unconscionability, substantive unconscionability, or a combination of both. Razor v. Hyundai Motor Am., 854 N.E.2d 607, 622 (Ill. 2006); *accord* Davis v. Elite Mortgage Service., Inc., 2007 WL 1118432, *4 (N.D.Ill. April 11. 2007), citing Razor.

Procedural unconscionability "refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." Razor, 854 N.E.2d at 622. The terms of the agreement in the present action, however, are clear, easy to understand, and even repeated in several places, particularly the section regarding Pantel's waiver of her right to a jury trial. Nor is any alleged disparity in bargaining power relevant here. First, that is properly an issue for the arbitrator, not this Court. *Cf*. Morgan, *supra* at *4. Moreover, "mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." Morgan, *id*., at *5 (quoting Streams Sports Club, 75 Ill.Dec. 667, 457 N.E.2d at 1232, and citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 (1991) ("Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.")). Finally, Pantel was not obligated to accept a job with TMG; she applied for the job and could have refused it had she wanted to avoid signing the arbitration agreement. *Cf*. Morgan, *id*. ("Morgan's bargaining position was not so inferior that he should be characterized as helpless. Morgan has not alleged that he was in such a vulnerable spot that he

had no choice but to buy a 1997 Sebring from Bill Kay. He fails to convince the court that the disparity in bargaining power renders the arbitration agreement unconscionable.").

Substantive unconscionability "refers to those terms which are inordinately one-sided in one party's favor." Razor, 854 N.E.2d at 622. It is clear that no substantive unconscionability obtains here. First, the agreement expressly provides that the arbitration will be conducted pursuant to the American Arbitration Association's Employment Dispute Resolution Rules. (Exhibit "A," at p. 3). Second, the agreement allows Pantel all relief she could obtain in this Court, and although the parties are tentatively supposed to split the cost of the arbitration, Pantel can obtain help from defendants with the costs in the event she is unable to pay them. (*See* Exhibit "A" at p. 3 under "Procedure For the Arbitration"). It is, in other words, an agreement broader and more favorable to the plaintiff than agreements that have been upheld in other cases. *See, e.g.,* Rosen v. SCIL, LLC, 799 N.E.2d 488 (Ill.App. 2003) (arbitration agreement upheld despite prohibition against class actions and a clause splitting the arbitration costs in a similar manner to the agreement here).

    3.    *The Scope of the Agreement Covers the Claims Asserted by Plaintiff.*

The agreement is sufficiently broad to cover the claims alleged by Ms. Pantel in the Complaint. The agreement explicitly references the Fair Labor Standards Act, and further states that it applies to the employee's rights "under federal and state statutes and common laws to the fullest extent allowed by law". (Exhibit A; *see also* excerpt from Exhibit "A" quoted at p. 2 above)**.** Pantel also explicitly waived her right to trial by jury in favor of agreeing to the expeditious arbitration of her claims. The Complaint sets forth claims under the Fair Labor Standards Act and Illinois state wage and hour law and demands a jury trial. All of these claims are covered by the express language of the agreement.

4.  *There is Adequate Consideration for the Arbitration Agreement.*

As noted above, the parties were mutually bound by the agreement to arbitrate, and Pantel continued to work at Ted's Montana Grill for several months after signing the agreement. (Grunwald Decl. at ¶ 4). Where both parties are equally bound to arbitrate, mutual consideration exists for the agreement. *See, e.g.*, Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 637 (7th Cir. 1999).

5.  *The Plaintiff's Inclusion of an Individual Defendant Does Not Vitiate the Arbitration Agreement.*

For reasons that are unclear, the Complaint asserts claims not only against corporate defendants TMG of Illinois, LLC, d/b/a Ted's Montana Grill (a Georgia limited liability company), and Ted's Montana Grill, Inc. (a Georgia corporation), but also against Mr. George McKerrow, an officer of those companies. There is no allegation in the Complaint that Mr. McKerrow took any action with respect to Pantel in any capacity other than simply happening to have been an officer of defendants when she worked there.

Mr. McKerrow's status as a defendant does not vitiate the enforceability of the arbitration agreement. A party to an arbitration agreement cannot evade its effect by adding a non-signatory party to the lawsuit. *See, e.g.*, Dunmire v. Schneider, 481 F.3d 465, 466-468 (7th Cir. 2007), and the cases cited therein (affirming enforcement of arbitration agreement even though the defendant employee was not signatory to the agreement: "Morgan Stanley's obligations to Dunmire depend on what its agents did (or omitted) when dealing with his account. … That Schneider and Morgan Stanley's other employees did not sign does not distinguish this from any other situation in which the signatories to a contract confer benefits on third parties."); In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978, 659 F.2d 789, 796 (7th Cir. 1981)

("It would advance neither judicial economy nor the purposes of the federal arbitration act to … allow Transport to defeat the effect of an arbitration agreement by joining a nonsignatory as a party-plaintiff in its complaint."); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3rd Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."), citing, Arnold v. Arnold Corp., 920 F.2d 1269, 1281-1282 (6th Cir. 1990) (interpreting arbitration clause to include non-signatory corporate officers in shareholder suit); *see also* Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185 (9th Cir. 1986).

**Conclusion**

For the above reasons, the agreement executed by the parties in this case applies to and covers all of the claims asserted by plaintiff in her Complaint. Pursuant to Section 3 of the FAA, therefore, a stay of proceedings pending the arbitration of these claims is appropriate. Defendants, therefore, respectfully request that the proceedings in this action be stayed and that plaintiff be ordered to arbitrate her claims.

Dated: April 23, 2008.

                                        Respectfully submitted,

                                        **TMG OF ILLINOIS, LLC, d/b/a TED's MONTANA GRILL, TED'S MONTANA GRILL, INC., and GEORGE W. MCKERROW, JR.**

                                        By: s/ John R. Hunt
                                              One of Their Attorneys

John R. Hunt
Theodore Lu
Admitted *Pro Hac Vice*
Shea Stokes Roberts & Wagner, ALC
3593 Hemphill Street
College Park, GA  30337
404.766.0076 Telephone
404.766.8823 Facsimile

Attorneys for Defendants

Jason C. Kim
Neal Gerber & Eisenberg LLP
2 N. LaSalle Street, Suite 2200
Chicago, IL  60602
312.269.8019

Local Counsel for Defendants

**CERTIFICATE OF SERVICE**

I, John R. Hunt, an attorney, hereby certify that a copy of the foregoing *Memorandum of Law In Support of Defendants' Motion to Stay Proceedings and Compel Arbitration* was served upon the following parties electronically (via ECF) on April 23, 2008:

Douglas M. Werman
Maureen A. Bantz
Werman Law Office, P.C.
77 West Washington St., Suite 1402
Chicago, IL  60602

Jamie G. Sypulski
Law Office of James G. Sypulski
122 South Michigan Avenue., Suite 1720
Chicago, IL  60603

 s/ John R. Hunt
One of Defendant's Attorneys