IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE PANTEL, on behalf of herself and all other persons similarly situated, known and unknown,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TMG OF ILLINOIS, LLC, d/b/a TED'S MONTANA GRILL, TED'S MONTANA GRILL, INC., and GEORGE W. MCKERROW, JR.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  07 C 7252

Judge Gottschall

Magistrate Judge Denlow

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION

Plaintiff, Michelle Pantel, by her attorney, asks the Court to deny Defendants' Motion to Stay and Compel Arbitration, and in support states as follows:

## I.　INTRODUCTION

Michelle Pantel worked as a server in Ted's Montana Grill in Glenview, Illinois, from late June through early November 2007.  Compl. ¶ 2.

On July 2, 2007, Plaintiff was required to sign a document styled "Arbitration Agreement Acknowledgement [sic] Form. "   Mem. Supp. Defs.' Mot. Stay Proc. Compel Arb. (hereinafter, "Defs.' Mem. Supp."), Ex. 1.  The Acknowledgment Form was also signed by a manager on behalf of Defendant Ted's Montana Grill, Inc.  *Id.*

The Acknowledgment Form in turn references the "Arbitration Procedure."[1]  *Id.*  The

Arbitration Procedure is a three-page document that purports to establish a grievance and

arbitration procedure for resolving all disputes related to an employee's employment with Ted's

Montana Grill, Inc.  Defs.'s Mem. Supp., Ex. 1, Arbitration Procedure.  The Arbitration

Procedure includes a pre-arbitration complaint process, as well as a detailed arbitration

procedure in the event that the complaint process fails, including sections on the scope of

arbitration, arbitration procedure and arbitrator's authority.  *Id.*

Except for the implication that the Arbitration Procedure is valid and enforceable, Defs.'

Mem. Supp. at 3, Plaintiff finds no particular fault with Defendants' Background statement, as

far as it goes.  What Defendants omit, and what Plaintiff focuses on in this response, are two

"unless" clauses in the section styled "Procedure For The Arbitration," excerpts of which are

highlighted below:

Procedure For The Arbitration:

Unless otherwise specified, the Arbitration Procedure is governed by the Federal
Arbitration Act, 9 U.S.C. § 1, et seq., and by the Employment Dispute Resolution
Rules of the American Arbitration Association. . . **Unless otherwise ordered by the
arbitrator, the expenses of the neutral arbitrator, the arbitrator's transcript and
court reporter's fee, if any, and any other costs associated with the facilities used
for the arbitration, shall be divided equally between the grievant and the
Company.  However, if the grievant is unable to pay his/her share of that
expense, the Company will advance the grievant's share (under mutually
agreeable terms to be worked out by the Company's Vice President of
Operations and the grievant)** . . . The parties may be represented by counsel of their
own choosing at the arbitration hearing, provided each party notifies the other of the
name address and phone number of their counsel at least ten workdays prior to the
hearing, **and provided further that each will be responsible for their own
attorney's fees unless the arbitrator awards the grievant reasonable attorney's
fees** . . ..

---

[1]     The Acknowledgment Form refers to the "Arbitration Procedure," and the
"Arbitration Agreement."  The document itself is styled "Arbitration Policy," and refers to the
"Arbitration Procedure," and the "Arbitration Agreement."  Since the text of that document uses
the term Arbitration Procedure, Plaintiff adopts that usage here.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO STAY AND COMPEL ARBITRATION**                                    **PAGE 2**

Defs.' Mem. Supp., Ex. 1, Arbitration Procedure, at 2 – 3.

These clauses place in doubt Plaintiff's right to attorney's fees and costs, and that very uncertainty would likely preclude Plaintiff's ability to proceed in arbitration. Further, the costs that Plaintiff would have to bear in entering arbitration process are prohibitive, whether or not an arbitrator, at some distant date, would ultimately award Plaintiff those costs in a final award. The consequence of these conditional clauses is that Plaintiff is precluded from effectively vindicating her rights in the arbitral forum, and thus the remedial and deterrent functions of the wage statutes under which her claims arise would be lost.

Because the loss of such rights go to the core of the remedial statutes at issue, and because Defendants' Arbitration Procedure includes no severability clause, the arbitration agreement is unenforceable, and Defendants' motion to compel arbitration must be denied.

## II.    STANDARD

In considering whether to compel arbitration, a court must determine whether a valid agreement exists, and whether the subject matter of the dispute is covered by the agreement. *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006). The court, not the arbitrator, makes the determination of "gateway matters, such as whether the parties have a valid arbitration agreement at all." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).

## III.    ARGUMENT

### A.    Defendants' Arbitration Policy Is Unenforceable Because Plaintiff May Be Required to Bear Arbitration Costs and Attorneys' Fees, and Because the Arbitration Costs Are Prohibitive

An agreement that requires arbitration of statutory claims is generally enforceable under the Federal Arbitration Act (FAA). 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 635 (7th Cir.

1999). While Defendants contend that arbitration provisions are "liberally enforced," Defs.' Mem. Supp. at 4, the purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration . . . and to place arbitration agreements *upon the same footing as other contracts."* *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 89 (2000) *quoting Gilmer,* 500 U.S. at 24 (emphasis added). Thus, the federal policy favoring arbitration does not represent a preference for arbitration over litigation, but a policy favoring the enforcement of contracts. *Dean Whitter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219 (1985).

The arbitration of statutory claims is proper because a party surrenders only the federal forum, and not the substantive rights granted by the statute, where parties agree to arbitrate prior to the occurrence of the dispute. *Gilmer,* 500 U.S. at 26. Thus, arbitration of a statutory claim is appropriate so long as a party may effectively vindicate the cause of action in the arbitral forum. *Id.* at 28; *McCaskill v. SCI Mgmt. Corp.,* 298 F.3d 677, 684 (7th Cir. 2002)(Rovner, J., concurring); *Cole v. Burns Int'l Sec. Serv.,* 105 F.3d 1465, 1484 (D.C. Cir. 1997); *Shankle v. B-G Maintenance Management of Colo.,* 163 F.3d 1230, 1234 (10th Cir. 1999). Where the terms of an arbitration agreement prevent a party from fully and effectively vindicating her rights, the agreement is unenforceable. *Cole,* 105 F.3d at 1485; *Shankle,* 163 F.3d at 1235-36; *McCaskill,* 298 F.3d at 684 (Rovner, J., concurring).

In *Cole* and *Shankle,* the issue was whether, as a part of a pre-dispute arbitration agreement, plaintiff employees could be required to pay all or a portion of the arbitration costs. In *Cole,* the court enforced the arbitration agreement after construing the ambiguous terms to require the employer to pay all the arbitrator's fees. 105 F.3d at 1485. The court held that an arbitration agreement would be unenforceable without such a construction. *Id.* In *Shankle,* the court held that the arbitration agreement, which required the employee to pay one-half the arbitrator's fees, was unenforceable. 163 F.3d at 1235.

> As *Gilmore* emphasized, arbitration of statutory claims works because potential litigants have an adequate forum in which to resolve their statutory claims and because the broader social purposes behind the statute are adhered to. This supposition falls apart, however, if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights.

*Id.* at 1234 (citations omitted); *accord Cole*, 105 F.3d at 1482; *Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244, 1248-49 (9th Cir. 1994) *cert. den.* 516 U.S. 907 (1995); *Paladino v. Avnet Computer Techs.*, 134 F.3d 1054, 1060 (11th Cir. 1998)(arbitration agreement unenforceable where it precludes award of Title VII remedies).

In both *Cole* and *Shankle*, the courts noted that arbitration costs imposed on the employee as a condition of invoking the procedure mandated by the employer resulted in the effective denial of the arbitral forum. *Cole,* 105 F.3d at 1484; *Shankle*, 163 F.3d at 1235. Such costs are "prohibitive," 163 F.3d at 1235, and result in plaintiffs being denied the judicial forum by contract, and the contractual forum by their inability to pay arbitration expenses. *Id.; see Cole* 105 F.3d at 1480 n. 8 ("average" arbitration case takes 15-40 hours at a cost of $3,750 to $14,000, but fees of $500 to $600 per hour are not uncommon). "Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws." *Shankle*, 163 F.3d at 1235 *citing Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975).

The final ruling in *McCaskill* generated an opinion, concurrence and dissent from the three-judge panel. 298 F.3d 677. Judge Rovner's concurrence (the majority opinion in *McCaskill v. SCI Mgmt. Corp., et al.*, 285 F.3d 623 (7th Cir. 2002)) focused on the provision of SCI's arbitration agreement that prevented the arbitrator from awarding attorney's fees, regardless of the outcome of the case. *Id.* at 684. As Judge Rovner noted, the right to attorney's fees is integral to the remedial and deterrent effect of civil rights statutes like Title VII. *Id.* at 648-50. So too other fee-shifting statutes that serve remedial and deterrent functions, like the

Fair Labor Standards Act and the state corollary, the Illinois Minimum Wage Law, both of which provide attorney's fees to the prevailing plaintiff. 29 U.S.C. §216(b); 820 ILCS 105/12.

The arbitration provisions at issue in this case obligate Plaintiff to pay one-half of the fees of the arbitrator and other costs relating to the arbitration proceeding, and the fees of her attorney, *unless* the arbitrator awards those amounts to her as part of a final award. Defs.' Mem. Supp., Ex. A, Arbitration Procedure at 2. While those provisions hold out the possibility that Plaintiff, on prevailing, *might* receive arbitration costs, attorney's fees, or both as part of the arbitrator's award, she may not. Further, Plaintiff cannot know whether those sums will be awarded to her before she is forced to incur costs to proceed with the arbitration.[2] So, while the suspect provisions are not written in the absolutist language of the arbitration agreements in the other cases cited, in the chilling effect of the challenged clauses here the result is the same.

Regarding the expected arbitration costs, class action cases, like this one, proceed under the AAA Supplementary Rules for Class Action Arbitration.[3] Ex. 1, American Arbitration Association, Supplementary Rules for Class Arbitrations. The Supplementary Rules call for an *initial* filing fee of $3,250.00 from the party requesting class treatment. Ex. 1, Rule 11. Thereafter, once the arbitrator has determined that the language of that agreement permits the arbitration to proceed on behalf of a class, a *supplemental* filing fee must be paid by the

---

[2]    Defendants assert that, in the event Plaintiff cannot pay her arbitration costs, she can obtain "help" from Defendants under the terms of the Arbitration Procedure. Defs.' Mem. Supp. at 8. In a sort of whimsical twist, Defendants claim that such a provision is "more favorable" to her. In fact, the clause in question states "if grievant is unable to pay his/her share of [arbitration costs], the Company will advance the grievant's share (under mutually agreeable terms to be worked out by the Company's Vice President of Operations and the grievant)." So the "help" that Defendants extend appears to take the form of a loan. How "mutually agreeable" such terms worked out under economic duress could be is certainly open to question.

[3]    The American Arbitration Association recently revised its Employment Arbitration Rules to cap the cost of arbitration to the employee for employer-promulgated arbitration plans. However, class action cases proceed under the AAA Supplementary Rules for Class Action Arbitration, and fees in such cases are not capped.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO STAY AND COMPEL ARBITRATION**                                    **PAGE 6**

requesting party according to the AAA fee schedule of the Commercial Arbitration Rules, based on the claim value. *Id.* For example, claims between $1 million and $5 million are assessed a $6,000.00 fee. Ex. 2, American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Administrative Fees. A further fee, a "Case Service Fee," is paid at the time the first hearing is scheduled. *Id.* For a case valued between the above amounts, the Case Service Fee would be $3,250.00; it is not clear from the rules whether the requesting party pays this amount, or whether it is equally divided between the parties. Thus, in the above example, and assuming that the case service fee is split between the parties, the party requesting class arbitration would be required to pay $10,875.00 in fees. This does not include that party's half of the arbitrator's fees.

Plaintiff is presently employed as a nursing care technician at Lutheran General Hospital in Park Ridge, a job she began at the beginning of this year. Ex. 3, Pantel Decl. ¶ 2. She is paid $11.21 per hour, *id.*, and thus her gross earnings are approximately $450.00 per week. In addition, she is paying off two student loans, that total approximately $8,000.00. *Id.*, ¶ 3. If Plaintiff is required to pay arbitration costs or attorneys' fees, or even if there is uncertainty as to whether she will ultimately be responsible for those costs, she could not proceed with her case. *Id.*, ¶ 4–5.

As regards to attorney's fees, Defendants' Arbitration Procedure does provide that the arbitrator shall base the decision and award on the facts presented "in accordance with governing prevailing law, including statutory and judicial authority." Defs.' Mem. Supp., Ex. 1, Arbitration Procedure, at 3. And if this was all that the Arbitration Provision had to say about the matter, it would be less objectionable. However, the default position, as noted above, is that "each [party] will be responsible for their own attorney's fees *unless* the arbitrator awards the grievant reasonable attorney's fees." Defs.' Mem. Supp., Ex. 1, Arbitration Procedure, at 3.

Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b); *see DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 822-23 (2d Cir. 1997)(fees considered under Section 216(b) as incorporated in the Age Discrimination in Employment Act). Notwithstanding this clear mandate, an arbitration award that fails to provide for attorney's fees to a successful claimant may not be overturned on appeal. *Id.* In *DiRussa,* the court of appeals acknowledged that the parties had submitted the question of attorneys' fees to the arbitration panel, and that the ADEA statute mandates that a successful age discrimination claimant be awarded attorney's fees under Section 216(b). *Id.* at 822-26. Nonetheless, due to the limited scope of review of arbitration awards that required a finding that the arbitrator manifestly disregarded the law in order to modify an award, the court affirmed the award. *Id.* at 822.

Notwithstanding the clarity of the fee-shifting provision in the FLSA, the "unless" attorney's fees clause in the Arbitration Procedure contemplates the possibility that the arbitrator would not award attorney's fees to the successful grievant. That clause leaves open the door for an arbitrator to deny attorney's fees, and draw that decision from the text of the arbitration agreement. Given the very high hurdle that must be surmounted in order for a reviewing court to modify an arbitration award, such an award is effectively beyond review on an issue like attorney's fees.

**B.    In the Absence of a Severability Clause, the Challenged Clauses Are Sufficient to Find the Arbitration Procedure Unenforceable and to Deny Defendants' Motion to Compel Arbitration**

Where provisions of an arbitration agreement are found unenforceable, the issue becomes whether the provisions can be severed from the balance of the agreement and arbitration

compelled, or whether the entire agreement is unenforceable. *See Booker v. Robert Half Intel*, 413 F.3d 77, 84-85 (D.C. Cir. 2005)(citing cases). As a general matter, where an arbitration agreement includes a severability clause, that is, language in the agreement that would permit a court to excise an unlawful provision, and removal of the impermissible clauses is not so substantial as to result, in effect, in a judicial re-write of the agreement, some courts have severed the offending provision and compelled arbitration. *See, e.g., Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003); *Cannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682-83 (8th Cir. 2001). However, where the arbitration agreement does not include a severability clause, or the illegality pervades the agreement, such arbitration agreements are declared unenforceable *in toto* and motions to compel arbitration are denied. *Perez v. Globe Airport Sec. Serve., Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001); *Shankle*, 163 F.3d at 1235 n.6; *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994). "In the absence of a severability clause, the attorney fee provision or the fee-splitting provision would be sufficient to find the agreements unenforceable and deny the motion to compel arbitration." *Anderson v. Regis Corp.*, No. 05-CV-646, 2006 U.S. Dist. LEXIS 31302, *24 (N.D. Okla. Apr. 26, 2006).

The Arbitration Procedure at issue here does not contain a severability clause. It does, however, include a statement that its terms may not be "modified or revoked." Defs.' Mem. Supp., Ex. 1, Arbitration Procedure, at 3. Accordingly, the Court should declare that Arbitration Procedure unenforceable, and should deny Defendants' motion to compel arbitration.

Such a result would comport with contract construction under state law as well. "If no ambiguity exists in the writing, the parties' intent must be derived by the circuit court, as a matter of law, solely from the writing itself." *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288, 565 N.E.2d 990, 994, 152 Ill. Dec. 308 (Ill. 1990). The written

agreement is thus presumed to speak the intentions of the parties that signed it. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884, 236 Ill. Dec. 8 (Ill. 1999).

The failure to include a severability clause by the drafters, Defendants, and the inclusion, on the other hand, of a 'no modification' clause, can only mean that Defendants intended the document to remain whole.  Given that challenged clauses are unenforceable, the Arbitration Provision as a whole cannot be enforced.

Congress provided for fee-shifting in civil rights actions and other remedial statutes to encourage individuals to vindicate their rights, and thereby advance the public interest. *Newman v. Piggier Park Enters.*, 390 U.S. 400, 402 (1968)(Title II discrimination).  The challenged clauses in Defendants' Arbitration Procedure place Plaintiff between Scylla and Charybdis: unable to proceed in federal court, yet unable to proceed in the arbitral forum due to the prohibitive cost.  Like the obligation to pay substantial arbitration expenses, the potential loss of attorneys' fees is fundamentally at odds with Plaintiff's rights under the FLSA and IMWL.

Because Defendants' arbitration clause does not allow all the relief which would otherwise be available to Plaintiff in this Court, Defendants' Arbitration Procedure is not enforceable.

WHEREFORE, Plaintiff ask this Court to deny Defendants' motion to stay and compel arbitration, and grant all other relief deemed just and proper.

Respectfully submitted,

MICHELLE PANTEL

s/Jamie G. Sypulski
One of Plaintiff's Attorneys

Douglas M. Werman
Maureen A. Bantz
Werman Law Office, P.C.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO STAY AND COMPEL ARBITRATION**                                      **PAGE 10**

312/419-1008

Jamie G. Sypulski
Law Office of Jamie G. Sypulski
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603
312/360-0960

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing **Plaintiff's Response to Defendants' Motion to Stay and Compel Arbitration** was served via electronic mail on May 29, 2008 on:

Jason Kim
Neal, Gerber & Eisenberg, LLP
Two North LaSalle, Suite 2200
Chicago, IL 60602

and

John R. Hunt
Shea Stokes, A Law Corporation
3593 Hemphill Street
College Park, GA 30337

s/Jamie G. Sypulski
Jamie G. Sypulski